Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THOMAS HOWLETT,<br><br>  Plaintiff,<br><br>  v.<br><br>NICOLET BANKSHARES, INC., ROBERT B. ATWELL, RACHEL CAMPOS-DUFFY, MICHAEL E. DANIELS, ANN K. LAWSON, JOHN N. DYKEMA, TERRENCE R. FULWILER, CHRISTOPHER J. GHIDORZI, ANDREW F. HETZEL, JR., DONALD J. LONG, JR., DUSTIN J. MCCLONE, SUSAN L. MERKATORIS, OLIVER PIERCE SMITH, and ROBERT J. WEYERS,<br><br>  Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Thomas Howlett ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

1

## NATURE OF THE ACTION

1. This is an action against Nicolet Bankshares, Inc. ("Nicolet" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of Nicolet and Mackinac Financial Corporation ("Mackinac").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Nicolet common stock.

7. Defendant Nicolet operates as the holding company for Nicolet National Bank which provides commercial and retail banking services for businesses and individuals. The Company is incorporated in Wisconsin. The Company's common stock trades on the NASDAQ under the ticker symbol, "NCBS."

8. Defendant Robert B. Atwell ("Atwell") is Chairman of the Board of the Company.

9. Defendant Rachel Campos-Duffy ("Campos-Duffy") is a director of the Company.

10. Defendant Michael E. Daniels ("Daniels") is President, Chief Executive Officer, and a director of the Company.

11. Defendant Ann K. Lawson ("Lawson") is Chief Financial Officer and a director of the Company.

12. Defendant John N. Dykema ("Dykema") is a director of the Company.

13. Defendant Terrence R. Fulwiler ("Fulwiler") is a director of the Company.

14. Defendant Christopher J. Ghidorzi ("Ghidorzi") is a director of the Company.

15. Defendant Andrew F. Hetzel, Jr. ("Hetzel") is a director of the Company.

16. Defendant Donald J. Long, Jr. ("Long") is a director of the Company.

17. Defendant Dustin J. McClone ("McClone") is a director of the Company.

18. Defendant Susan L. Merkatoris ("Merkatoris") is a director of the Company.

19. Defendant Oliver Pierce Smith ("Smith") is a director of the Company.

20. Defendant Robert J. Weyers ("Weyers") is a director of the Company.

21. Defendants Atwell, Campos-Duffy, Daniels, Lawson, Dykema, Fulwiler, Ghidorzi, Hetzel, Long, McClone, Merkatoris, Smith, and Weyers are collectively referred to herein as the "Individual Defendants."

22. Defendants Nicolet and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. The Proposed Transaction

23. On April 12, 2021, Nicolet announced the execution of a definitive merger agreement, pursuant to which Nicolet would acquire Mackinac and its wholly-owned banking subsidiary, mBank. Under the terms of the merger agreement, Mackinac shareholders will have the right to receive 0.22 shares of Nicolet's common stock and $4.64 for each share of Mackinac common stock. The press release announcing the Proposed Transaction states, in pertinent part:

**Nicolet Bankshares, Inc. To Acquire Mackinac Financial Corporation**

NEWS PROVIDED BY
**Nicolet Bankshares, Inc.**
Apr 12, 2021, 16:02 ET

GREEN BAY, Wis. and MANISTIQUE, Mich., April 12, 2021 /PRNewswire/ -- Nicolet Bankshares, Inc. (NASDAQ: NCBS) ("Nicolet") and Mackinac Financial Corporation (NASDAQ: MFNC) ("Mackinac") today jointly announced the execution of a definitive merger agreement, pursuant to which Nicolet will acquire Mackinac and its wholly-owned banking subsidiary, mBank.

Based on the financial results as of December 31, 2020, the combined company will have pro forma total assets of $6.1 billion, deposits of $5.2 billion and loans of $3.9 billion, and Mackinac would represent approximately 25% of the combined company's year-end assets.

\*   \*   \*

*Transaction Information*

Under the terms of the merger agreement, Mackinac shareholders will have the right to receive 0.22 shares of Nicolet's common stock and $4.64 for each share of common stock of Mackinac Financial Corporation with total consideration to consist of approximately 80% stock and 20% cash. Based upon the closing price of Nicolet Bancshares common stock of $84.40 on April 9, 2021, the implied per share purchase price is $23.21, with an aggregate transaction value of approximately $248 million.

The estimated transaction value is a 1.69 multiple of Mackinac's tangible book value as of December 31, 2020 and equates to approximately 18.3x Mackinac's 2020 earnings per share. Additional assumptions and metrics can be found in the related Investor Presentation.

*Leadership/Employee Information*

Post-merger, Paul Tobias will join the Boards of Directors of Nicolet Bankshares and Nicolet National Bank. All customer-facing employees of Mackinac are expected to stay on in the same capacity.

*Approvals and Closing Date*

The transaction has been unanimously approved by the boards of directors of both companies. It is subject to both Mackinac and Nicolet shareholder approval, regulatory approvals and other customary closing conditions and is expected to close in the third quarter of 2021. Upon consummation of the transaction, Nicolet's existing branch at 325 W. Pine Street, Eagle River, WI is expected to close and consolidate with continued service out of the legacy mBank office at 400 E. Wall Street, Eagle River, WI.

*Advisors*

Hovde Group, LLC provided a fairness opinion to the Board of Directors and Bryan Cave Leighton Paisner LLP served as legal counsel to Nicolet in this transaction. Piper Sandler & Co. served as financial advisor and delivered a fairness opinion to the Board of Directors of Mackinac, and Honigman LLP served as Mackinac's legal counsel.

**About Nicolet Bankshares, Inc.**

Nicolet Bankshares, Inc. is the bank holding company of Nicolet National Bank, a growing, full-service, community bank providing services ranging from commercial and consumer banking to wealth management and retirement plan services. Founded in Green Bay in 2000, Nicolet National Bank operates branches in Northeast and Central Wisconsin and the upper peninsula of Michigan. More information can be found at www.nicoletbank.com.

**About Mackinac Financial Corporation**

Mackinac Financial Corporation is a registered bank holding company formed under the Bank Holding Company Act of 1956 with assets in excess of $1.5 billion and whose common stock is traded on the NASDAQ stock market as "MFNC." The principal subsidiary of the Corporation is mBank. Headquartered in Manistique, Michigan, mBank has 28 branch locations; ten in the Upper Peninsula, ten in the Northern Lower Peninsula, one in Oakland County, Michigan, and seven in Northern Wisconsin. The Corporation's banking services include commercial lending and treasury management products and services geared toward small- to mid-sized businesses, as well as a full array of personal and business deposit products and consumer loans.

24. On May 19, 2021, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

25. The Registration Statement, which recommends that Nicolet shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Nicolet's and Mackinac's financial projections; (ii) the financial analyses performed by Nicolet's financial advisor, Hovde Group, LLC ("Hovde"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving Hovde.

26. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Recommendation of the Board of Directors of Nicolet; (ii) Reasons for the Merger; (iii) Opinion of Nicolet's Financial Advisor; (iv) Prospective Financial Information of Mackinac; and (v) Prospective Financial Information of Nicolet.

27. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Nicolet shareholders will be forced to make a voting decision on the Proposed Transaction without full

disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

          **1. Material Omissions Concerning Nicolet's and Mackinac's Financial Projections**

28.      The Registration Statement omits material information concerning Nicolet's and Mackinac's financial projections.

29.      With respect to the Nicolet Projections, the Registration Statement fails to disclose: (1) all line items underlying the mean analyst earnings per share estimates for Nicolet for the years ending December 31, 2021 and December 31, 2022; (2) the individual inputs and assumptions underlying the estimated long-term annual earnings per share growth rate for Nicolet of 5.0% for the years ending December 31, 2023 through December 31, 2025; (3) Nicolet's net income projections; (4) Nicolet's dividend projections; and (5) a reconciliation of all non-GAAP to GAAP metrics.

30.      With respect to the Mackinac Projections, the Registration Statement fails to disclose: (1) certain internal balance sheet and income statement projections for Mackinac for the years ending December 31, 2021 through December 31, 2025; (2) all line items underlying Mackinac's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

31.      The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any,

to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

32. When a company discloses non-GAAP financial metrics in a Registration Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

33. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Hovde's Analyses

34. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by Hovde.

35. The Registration Statement fails to disclose the following concerning Hovde's "*Market Approach — Comparable Merger and Acquisition Transactions*" and "*Market Approach — Comparable Public Company Analysis*": (1) the individual multiples and financial

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited June 1, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

metrics of each company and transaction Hovde observed in its analyses; and (2) the value of each selected transaction.

36. The Registration Statement fails to disclose the following concerning Hovde's "*Income Approach — Discounted Cash Flow Analysis*": (1) the terminal values used in the analysis; (2) the individual inputs and assumptions underlying the (i) multiples of 18.3x to 22.3x and of 1.70x to 1.90x, and (ii) discount rates between 9.70% and 11.70%; and (3) the basis for Hovde's assumption that Mackinac's projected adjusted tangible book value was equal to total tangible assets multiplied by 8.0%.

37. The Registration Statement fails to disclose the following concerning Hovde's "*Pro Forma Impact Analysis*": (1) the combined projected balance sheet and estimated EPS information of Nicolet and Mackinac over the projection period of years ended December 31, 2021 through 2025, and all underlying line items; (2) the closing balance sheet estimates as of September 30, 2021 for each of Nicolet and Mackinac; (3) the financial forecasts and projections of each of Nicolet and Mackinac for the years ending December 31, 2021 through 2025; (4) the pro forma assumptions (including, without limitation, the cost savings expected to result from the merger, as well as the purchase accounting adjustments), each of which were provided by Nicolet management; (5) the extent to which the merger could be dilutive to Nicolet's estimated tangible book value per share and accretive to Nicolet estimated earnings per share over the projection period; and (6) the number of pro forma shares to be outstanding.

38. The valuation methods, underlying assumptions, and key inputs used by Hovde in rendering its purported fairness opinion must be fairly disclosed to Nicolet shareholders. The description of Hovde's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Nicolet

9

shareholders are unable to fully understand Hovde's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Hovde

39. The Registration Statement omits material information concerning potential conflicts of interest involving Hovde.

40. The Registration Statement provides that, "[p]ursuant to Nicolet's engagement agreement with Hovde, Hovde received from Nicolet a fairness opinion fee of $[•] upon the delivery of the fairness opinion to Nicolet."

41. The Registration Statement thus fails to disclose: (1) the specific amount of compensation Hovde has received or will receive in connection with its engagement by the Company; and (2) the specific amount of Hovde's compensation that is contingent upon consummation of the Proposed Transaction.

42. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

43. The omission of the above-referenced information renders the Registration Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

46. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

47. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

48. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

49. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

50. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the

statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

54. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

  B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

  C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

  D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

  E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: June 1, 2021        Respectfully submitted,

               **HALPER SADEH LLP**

               By: /s/ Daniel Sadeh
               Daniel Sadeh, Esq.
               Zachary Halper, Esq. (to be admitted *pro hac vice*)
               667 Madison Avenue, 5th Floor
               New York, NY 10065
               Telephone: (212) 763-0060
               Facsimile: (646) 776-2600
               Email: sadeh@halpersadeh.com
                   zhalper@halpersadeh.com

               *Counsel for Plaintiff*